Case number 141484 Henry Patrick McGhee v. Hybrid Logistics, Inc. and Cleaver Brooks, Inc. Arguments not to exceed 15 minutes for plaintiff, 15 minutes to be shared by the defendants. Mr. Morgan for the appellant. Good morning, Your Honors. My name is Courtney Morgan. I am appearing on behalf of Mr. McGhee. I would like to reserve two minutes of my time for rebuttal. This is a case appealing a grant of some... Before you start in, you may recall that we asked for specific evidence that went beyond a claim of residence in order that we might determine whether we in fact have diversity of jurisdiction here. And your response, while you certainly agreed that we had asked for more than that and cited a case that talked about the need to establish domicile and citizenship, you've only ever told us about residence. Where's your citizenship and your domicile so we know whether we can even be here and whether the court below had jurisdiction? I believe it, with respect to Mr. McGhee, I believe that to be the state of Alabama, Your Honor. Well, we hold... We surely need something more than we believe that. Ordinarily, we would say if you haven't pled it, if it doesn't actually appear in your pleadings such that we can say, yep, you've made your case, we would have to say we don't really have the evidence necessary for us to determine whether we have jurisdiction under diversity. I must point out that I'm in a defensive posture with respect to diversity, having filed a case in state court and the matter was removed by the defendants. That doesn't relieve you of the responsibility when we ask you the question to give us the answer. Well, the answer was never explored in discovery by anyone. There isn't any record evidence that I could provide. So you can't agree on jurisdiction in our system. You have to demonstrate it. And we asked for that demonstration and I'm just really confused about why when we said, and my recollection is we said explicitly we need something beyond residence and you responded with residence. I would suggest that your questions are better put to the defendant who is the proponent of jurisdiction. I've never claimed that the court had jurisdiction, although I must admit that at all stages of the proceeding we did not contest that jurisdiction. So who is your client? My client is Mr. McGee. Has he lived in, where did you say he is, Alabama? Alabama. Was he born there? Did he live there? Has he always been there? Yes. So your representation to us is that he's a citizen of the United States, yes? Yes. And that he has always been domiciled, at least not just resident, that means something much more transitory, domiciled in Alabama. That's correct. And he doesn't have a domicile anywhere else. That's correct. As I understand the record, now as again, Mr. McGee was not inquired of these subject matters during his deposition by the defendants. Yeah, but we asked. And it's my understanding that I am bound by the record if I don't have anything in the record to provide to you. Well, when we say that we, I mean I don't want to just have a long argument with you about this, but when we say that we don't believe the record reflects the facts necessary for us to determine our jurisdiction, and we ask you for them, we expect that, and we did I believe explicitly say we needed something beyond residence. That means that we're asking for the facts that would demonstrate to us beyond residence that we do in fact have jurisdiction, and we were asking you for them. And I will tell you that I reviewed the record evidence as supplied to the court and could find nothing in there other than the information that I provided to you. And I specifically pointed out in our response that we were not the proponents of jurisdiction in this case because it was removed by Cleaver Brooks, and I would suggest that therefore they bear the burden of persuasion with respect to the court's jurisdiction, not I. Okay, well, if you want to be the guy who says when the court asks me for something and I don't think I have to give it to them, I'm not going to. That's not what I was attempting to say at all, Your Honor, and I apologize if that's the inference that you got from me. Okay, you may proceed. Thank you. As I indicated, this is a matter with respect to grant a summary judgment on the question of due care in all activities undertaken by persons and corporations under like circumstances. This rule of the common law arises out of the concept that every person is under a general duty to so act or to use that which he controls as not to injure another. Now, to illustrate that duty for the court, I'd like to pose a hypothetical, and that hypothetical is suppose that instead of the hazardous cargo in this case being tall, thin, heavy coils standing up to be shipped in that configuration, suppose instead that Cleaver Brooks was ordering gasoline to be shipped to it in tankers, and this had been going on for some time and they were steel tankers. And then one fine day, one of its suppliers didn't have a steel tanker, so they called Cleaver Brooks on the phone and said, Would you mind if we sent the gasoline to you in a glass tanker, which is what we have, and Cleaver Brooks said yes. And then during the loading of the gasoline into that glass tanker, something occurs, the glass breaks, the gasoline gets out, there's a spark and a conflagration. I would suspect that the members of this bench would say that Cleaver Brooks owes its fair share of the liability for that event because they gave permission to use something dangerous, a glass tank, as opposed to something safe, a steel tank. Wouldn't it depend on why they wanted it to be steel in the first place? It would, and in this case our argument is, and in fact our argument is based upon the argument of persons employed by Cleaver Brooks, that Cleaver Brooks had decided that the safety racks, which are found at page 3156 of the record, and I have a couple of pictures of them to show you here, these racks here that you'll find in the record, these safety racks were instituted by Cleaver Brooks as the only safe method to transport these tall things coils upright to Cleaver Brooks, and that information is based upon the testimony of Joe McCauley, who was the tube mill manager at the time and is now the plant manager of the Thomasville facility for Cleaver Brooks, and the buying manager, a Shirley Smith, who testified on these matters as well, and Mr. McCauley's testimony is at pages 32, 48, and 33, 02, where they say the... What if they said, we only want you to drive less than 35 miles an hour, and then they change their minds later and they say, well yeah, this time you can go 40. Does that mean if the accident was caused by going 38, they're responsible? Under the circumstances of the hypothetical, I would argue that they would be partially responsible. We are not in this case suggesting... Partially, that's because it's comparative negligence? That's correct. Then we're talking, then your answer is yes, you're responsible for that. The point being that... Even though it's purely for your own purposes, you can't lessen anything that might increase the risk, so you want them to reduce risk to extremely careful, and then they allow you merely to be careful, then they're responsible at that point? That is not at all what I have advocated to you, your honor. That's what seems to be the import of what you're saying. They insist on this before, and now they don't insist on it once, and therefore they're liable. That seems... They insist on it... Counterintuitive, let me put it that way. They insist on it as the only acceptable method of shipment. There is no other acceptable method to them. That's because they can decide whether to buy the stuff or not. So he could have insisted that you go 20 miles an hour for whatever reason, he wanted you to get there later. And then he said, one time they want to go 30, he says, okay, you can go 30. Then if going over 20 caused an accident, you would say he owed a duty to make it just as safe as he insisted before, regardless of why he insisted that. That's puzzling to me. I'm not sure what the theory for why it's puzzling, but it's puzzling to me that that would be the case. I think that's what's maybe driving the lower court below when they threw it out. It doesn't seem like a standard basis for negligence liability. The problem with your position, Your Honor, is that there's a false equivalency there. Cleaver Brooks decided, for safety reasons, that these racks were the only acceptable method. That is the testimony I've cited for you by Cleaver Brooks' own employees. What I understood was that that was for the safety when it arrived at their location. That was one of... Was it safer to unload them when they arrived? That is certainly one place where safety would apply. Ms. Smith also acknowledged that it would be for the safety of anyone who would come in contact with it, including the driver of the truck. And so I think that that's incorrect. And I do believe that there's a fallacy that was engaged in by the lower court, and that is with respect to, I believe this is page number 484, this diagram here. The lower court's opinion presupposed that the diagram and the racks were of equal safe value in terms of shipping of these coils. And that's incorrect because it was this diagram that was in use by Cleaver Brooks prior to their change in 2003 to require these racks. They determined that this method was unsafe and required this method to be used. And that because it was the only acceptable method to them. And had they stuck to their guns, this accident wouldn't have happened. And so we believe that they are liable for their fair share of the liability. With respect to hybrid logistics... But if all along they had a, you usually have to use the racks unless you get special permission, then they would not be liable? It would still be a matter of what is reasonable care under the circumstances, Your Honor. And I believe that is something that is consigned to a jury to determine. So it's always basically whether they violated the duty of care to the shipper. That's correct. It is a general duty of care. The plaintiff is arguing he is a member of the general public and is entitled to the same care as anyone. And suppose under my hypothetical that the truck had left and was on its way down the road and then there was an accident and then some member of the driving public, if you rule there's no duty today, that member of the driving public also has no rights against Cleaver Brooks. And I don't think that's a proper expression of Michigan law. With respect to hybrid logistics, they got this diagram from Olympic Steel. Hybrid logistics own expert testified that they should have recognized these instructions on their face as unsafe and declined involvement in the matter. But they didn't. They went forward, they brought in a black warrior, my client wound up at Olympic Steel and he was injured thereby. All we are saying with respect to hybrid logistics is your own expert says on its face this is bad, you shouldn't use it. They have violated their duty of care as well. Violation is not that they failed to pass on that method that was not used. I thought that originally when I read your briefs, I thought that was your argument. We certainly have. They failed to pass on this assertedly safer way. We have argued both. And it's really inconsistent with that to argue they should have just not. What's the alternative? First of all, is the thrust of the argument or the crux of the argument that they failed to pass that information on negligently? We have advocated both positions in our brief. They are in tension with each other. There is some tension there, I acknowledge that. We are entitled to plead alternatively. Yeah, but then each one you have to analyze distinctly though. If it's failing to pass it on, I'm trying to see how that works for you. How is there negligence in failing to pass that on? Is it like they should have known that that was the safe way to do it? Well, failing to pass it on deprives the plaintiff of course of an opportunity to evaluate that method and determine whether or not he wishes to engage in it. I see I'm out of time. I'll just reserve for rebuttal. Thank you. Good morning. My name is Jim Harris for Defendant Apley Cleaver-Brooks. And counsel for hybrid is also here. We'd like to split this eight minutes, seven minutes, if that's acceptable. Our letter brief did address the domicile issue. On page 1073 of the trial court record, there's an excerpt from Mr. McGee's deposition where he gave an address in the state of Alabama as of that date, March 27, 2013. He also specifically asked that he live there at the time of the accident four years earlier. He agreed that he did. And I think that's a very strong indication of his domicile, his intent to stay there. And we have no reason to think he's ever moved. Even if he did move subsequently, that wouldn't invest in the court of jurisdiction. So I think we're in a good place in terms of being able to decide this on the merits. Any other concerns about jurisdiction, since I am the removing party, I feel a little bit more of an obligation. You may proceed. Thank you. I guess the first thing I took note of in the argument was the gasoline and the glass container analogy is very interesting because the appellant's brief at page 28, they specifically disavowed this being an inherently dangerous activity. So I think that entire analogy falls away for that reason alone. But the real issue here with respect to duty, I think, and Judge Cohen found there was a lack of duty and a lack of causation, cause in fact, proximate cause as to Cleaver Brooks. But the duty issue, I guess the first thing I'd like to give the court a couple of sites, and I hate to waste oral argument time with citations, but I really didn't realize where they were going with this until I read the reply. Basically trying to use our standard that we require the ROCs at a certain point in time as the tort duty, the tort standard of care. And Michigan Supreme Court's disavowed that. The key cases are McKernan, that's M-C-K-E-R-N-A-N versus Detroit CSR Company, 138 MISH 519 at pages 526 to 532, 101 Northwest 812. That's a 1904 decision. It's kind of old, but Michigan Supreme Court mentions this again in 1992. And I apologize, they're not in the briefs as I mentioned, but I think this is really controlling of what they're trying to do with the whole argument with respect to the racks. The 1992 decision is Bukowski, excuse me, B-U-C-Z-K-O-W-S-K-I versus McKay, 441 MISH 96, page 99 in the footnote 1, 490 Northwest 2nd, 330. You can't point to our standards to set the standard of care. There's also been, I think the testimony has been mischaracterized to some extent in only safe versus only acceptable method has been conflated. The testimony doesn't say it's the only safe method. It's the only method we were accepting for a particular point in time. As your question kind of alluded to, it was implemented because of unloading, not because of concerns about loading, which are not our responsibility. We don't do it. And unloading is different because they've been on the highway for an unknown period of time. We also don't know how they're loaded. Wouldn't you have a duty, though, to people out on the street if you procure a, not inherently dangerous, this is not explosives, I understand that, but if you said, please ship breakable glass or something that could easily fall on the highway and cause injury and bring it down in your pickup truck, and these pieces of glass are 6 feet by 12 feet or something like that, so a reasonable person might know that that could unreasonably cause danger to the highway, would you owe a duty to the people who were injured by virtue of that glass being spilled on the highway, even though someone else might also owe a duty because they did it at your behest? I don't believe so, and here's why. That's pretty strange under tort law. I mean, if you ask, if you're part of, if you cause something that's unreasonably dangerous to occur, then you owe the duty to the people who are foreseeably hurt by that unreasonable activity that you caused to occur, knowing that there is that risk. Right. There's a couple of suppositions built into that, though, which is that we cause it, which we have a cause and effect argument that I'll address. Yeah, I'm assuming that the reason it's unreasonably dangerous is because it can cause the very kind of injury that occurred. I don't believe we have a duty in that setting, and here's why. The Michigan Supreme Court, most recently in the Hill case, Hills v. Sears, said that the two critical components of duty are a relationship of the parties and foreseeability. In that instance, there's no relationship of the parties, as there is here. Well, foreseeability by hypothesis. In standard tort law, if you drive down the street, you don't have to, you just have to foresee that it's dangerous, and somebody you never heard of that you didn't even know was there is still going to be able to recover. Well, the court, the Michigan Supreme Court has said that either one of those missing is, there's no duty there. But on that theory, you can just drive down the street and cause an injury, and all those people that you didn't know were going to be on the street can't recover from you. Well, we weren't driving down the street, and here's, I think... Yeah, but under your theory, it would eliminate that. No, it wouldn't for the... Why not? It's unforeseeable. I don't know who's driving down the street when I'm going 80 miles an hour. I think the way to make sense out of this is, if I just lay out again, the relationship of the parties here. It's Cleaver Brooks, the purchaser. We contact... I'm talking about somebody totally unforeseeable in my hypothetical that I'm asking you about. The injured party is unforeseeable. You're saying that the injured party, you do something unreasonably dangerous, you know, the B is less than the P times L and all that learned hand stuff. It's unreasonably dangerous to do it because people whom you've had no prior connection with, never heard of, don't know whether it's the grandmother of somebody who was never in the state before, you don't know who it is. But you're unreasonably risking injury to that person. You owe a duty to that person, right, or not? You're saying no? I'm saying no as the purchaser. We're not the ones driving the vehicle. We're not the ones choosing... Well, you don't want to answer my hypothetical, then. Well, none of the facts of this case, none of the hypothetical. If these had rolled off the truck, I don't think we have a duty there because we're not the one driving the truck. We're not the one deciding who drives the truck. We're not the one hiring the company that picks the guy that drives the truck with several layers removed. And I think this is really a situation where you order a pizza and there's a 30-minute guarantee, as there used to be for Domino's. That driver tries to satisfy the 30-minute guarantee. He gets an accident. There's been suits against... There were suits against Domino's. There were suits against drivers. No one's ever said the person ordering the pizza is responsible for... They said, you get here. I know you have a speeding car. Please get here within the next three minutes and I'll pay you double. Then there would be liability, right? I'm not sure there would, Judge. I think that... That's really strange. You've got the sellers in a position to say no to that request if it's unreasonable. And I think the critical thing here is, too, factually... The touchstone of tort law is foreseeability, though. Well, in a relationship with the parties, it's very important. And here, so many levels were removed. And the other thing, factually, is the argument below was never that we were... We simply rode off the racks. There was... The argument was that we... No, I understand that. ...sent it to us. Whether there was negligence. Right. But the argument was... You're saying there's no duty. That's troublesome. I don't understand it. Well, it's all about the relationship with the parties and the number of intervening actors here. Before you get to that person, that's injured. And I think there are some differences, too, between the employee of Black Warrior, the shipping company that's supposedly an expert at shipping these sort of things. He's in a little bit better position than a bystander on the highway, which I still think... I'm still not sure there's a duty there, but it's very different facts than what we have. Is there any basis for what I think is the underlying supposition from Judge Rogers' hypo that this was an unreasonably dangerous activity to begin with? They disavow that being an unreasonably dangerous activity. At page 20 of their brief, they talk briefly about inherent dangerous, the concept under Michigan law, and then they say, but that's not what we're arguing for here. So, no. I mean, the Black Warrior, the employer of the plaintiff, is in the business of shipping this sort of thing. And that's why they were engaged by Hybrid after... Hybrid was engaged by Olympia after we contacted Olympia. But the other issue here is that the supposed negligence by us was the assent to this PDF document, not writing off the racks in general. It was a very specific plan that was not followed. And I think that's the beginning and end of the causation analysis as well. You don't have but for, and there's been much ink spilled on the issue of superseding and intervening cause and whether that was treated properly. But in the end, the same facts that would support that, that comes into play after there's proximate cause. But here, the same facts that Judge Cohen cited for the lack of... for superseding causation cut off but for approximate causation as well. And then that's the very simple, that's the low-lying fruit there in terms of Hybrid. But I think the duty ruling is correct as well. And I think it's time for me to turn it over unless there are any more questions. There are not. Thank you. Thank you. Good morning. Deborah Hebert on behalf of Hybrid Logistics. I'm in a little bit of a different position here because I'm the logistics person. I'm the entity that hires the motor carrier with the specialty to transport goods. And when I think about the duty here with regard to my client anyway, it seems to me we have to distinguish between the duty not to directly create harm to somebody. And that is the duty to act in a way that may, that could foreseeably cause an injury to somebody versus the duty that I think maybe applies more in the context of my client, which is to go out and to protect, to warn, to intervene, to take some affirmative act to make sure that somebody else doesn't get hurt. And I think that's the kind of duty. You know, I did not do anything to directly hurt. And I'm not saying that Cleaver Brooks did either, but my client did not do anything to directly hurt this client. The argument against us, or the claim against us, is that we didn't provide the PDF instruction, which I'll talk about a little bit. It was intended to be forwarded though, right? And we did forward that. There's no dispute of fact that we did forward that to Black Warrior, which is Mr. McGee's employer. There is no doubt about that. We did, we were given the PDF instruction. We did convey that to Black Warrior. There's no doubt about that. Ms. Overton testified about that. The problem is apparently Black Warrior never conveyed it to its employee, Mr. McGee. So what, in your view, is your opponent's theory for how you were negligent? I have to tell you, it's been a head-scratcher for me on this whole case. I think the duty... No, I thought he said you were negligent in not passing it on. Correct. But you're saying it's uncontested that you did pass it on to Black Warrior. His theory is that we did not pass it along directly to the employee of Black Warrior, that it wasn't enough just to give it to Black Warrior, the motor carrier. We also had to ensure and have independent communications with the driver to make sure the driver received it. And that's where Judge... Do you have independent communication with the driver? In terms of where to be, when, because that's our specialty. We are the people who can deal with the logistics. You have to be here at this time, that location. To pass it, you couldn't give it to the janitor. No, we gave it to... I understand, but I mean, just hypothetically, the fact that it didn't get there, the fact that you gave it to somebody can't all by itself be enough. Well, we gave it to the... You still might be able to argue that this is summary judgment, right? Here's where I think the trial court got it exactly right. Under Michigan law, and this is very clearly established, it happens a lot in the construction business, but it's a principle that applies everywhere. If you hire an independent contractor to perform a function as my client did with this motor carrier, this is an interstate motor carrier with special licenses and qualifications, et cetera, I hire Black Warrior motor carrier as my independent contract. That's what our contract says. You're my independent contractor. I provide you the information. My job is that I do not have a duty, and this is what Michigan law says, I do not, as the person who hires an independent contractor, then have a duty to make sure that independent contractors' employees are properly instructed, trained, know what they need to know. But there might be a situation where you were negligent in not passing along information to your own... I mean, you can hire an independent contractor to fix your roof, but if the ladder is weak and you don't tell them that it's weak, you may, and he falls on somebody else, you may be liable by virtue of your failure to pass along information. Well, that's a good analogy. Let's say I'm not a roofer. I know nothing about roofing. I hire a roofer to come in and put my new roof on, and there's some dangers that are associated with putting that roof on that I'm not particularly well-informed of, but I give him my... You're not liable, but what if you are informed and asked to pass it along and you don't do it? That's a different case. But what if I tell my general contractor who I hire, the guy who I'm dealing with, the guy in charge, here's my specifications, here's the kind of roof tiles I want. What if you get specific information that will avoid an injury? You're asked to pass it along. You can't say, well, I'm going to give it to his associate in California. No, but I give it to the person who I'm hiring, the person in charge, the owner of that independent contractor, the supervisor on the job, whoever that person in charge is. I then don't have to go around to all the guys who come out and work on my roof and say, oh, did the supervisor give you this instruction? Do you know about this? I deal with that independent contractor, and that independent contractor then is responsible for coordinating and training its employees. And that's established Michigan law, and the judge relied on that law. Is there any dispute of fact here in this record with regard to whether the information was relayed by HYBRD and to whom? There is no dispute of fact that HYBRD provided that information, that PDF diagram by fax to the dispatcher who then provided it to the owner of Black Warrior who made the decision about whether to accept this assignment or not. There is no dispute about that. And those witnesses are Christy Overton and Mark White are the two witnesses. The owner is Mark White. Overton is the person who coordinates the task, takes in the assignments, makes the assignments to their drivers. Those two people had access to that. And Christy Overton testified that she believed that PDF instruction was provided to Mr. McGee. She assigned it to somebody else in her office and then I think left for lunch or something and assumed that it had gone through. Mr. McGee says he never got it. And so that would be an issue between Black Warrior and Mr. McGee. But there is no dispute that my client provided that PDF document to the owner and the dispatcher of this interstate motor carrier. And I have to say, too, along those same lines is that if you buy what I only have less than a minute. Well, a couple points that I want to stress is that the odd thing to me about all of this is that the complaint is that we did not give these PDF instructions directly to Mr. McGee, yet these PDF instructions are said to be, by plaintiff, unsafe. And so the allegation against my guy is that you didn't give my plaintiff something that was very unsafe. And we also have testimony from Mr. McGee. And those PDF instructions were not used. That method of loading was not used during this loading process. So it didn't cause, you know, it's not the PDF instructions that caused the injury. It was the way Mr. McGee decided to load this truck independently and separately for himself. And I'm seeing the red light, and it's making me lose my train of thought. Well, I'm sure everything is in my brief here. Thank you. Any questions? No? Thank you. Rebuttal? Yes, thank you. Very quickly, with respect to the subject matter of the deposition testimony of Christy Overton and Mark White, what happened was that Ms. Overton was contacted by Mr. Taylor of Hybrid Logistics. We have a load of stand-up coils. She says, stand-up coils? What are stand-up coils? He says, I'll fax you a document. He faxes this document, part of which is this diagram that I showed you earlier. There was no communication. These are the instructions that must be followed, and you've got to make sure your driver has them. Moreover, the contractual document that passed between Hybrid and Black Warrior says to Black Warrior, we, Hybrid, will contact your driver and discuss with him any specific instructions he needs to have. So that's the state of the record with respect to that subject matter. With respect to the claim against Hybrid, we talk about their experts' testimony that these instructions were bad on their face in two places in our brief, pages 5 and 34. So we've made both claims. I want to make that clear. Then lastly, with respect to inherently dangerous activity, counsel suggests that we disavow that on page 28 of our brief, and he's facile in his argument in this respect. There is an inherently dangerous activity doctrine in the state of Michigan, which is a doctrine of vicarious liability. What we say in our brief is we do not seek to establish vicarious liability against these defendants. We seek to establish that they breached their duty of care to the plaintiff, and therefore the inherently dangerous doctrine is not something that we're relying on. With that clarification, I have completed my argument. Unless there are any questions. There are not. Thank you. The case will be submitted.